## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBBIE O'SHEA, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-1636 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| CVB, INC., d/b/a Lucid, | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Debbie O'Shea ("**Plaintiff**"), on behalf of herself and all others similarly situated, brings this class action against Defendant CVB, Inc. d/b/a Lucid ("**Lucid**" or "**Defendant**") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

### INTRODUCTION

1.     This is a class action brought by Plaintiff on behalf of herself and other similarly situated consumers nationwide who purchased a Lucid Platform Bed with Upholstered Square Tufted Headboard in Twin, Full, Queen, King and Cal-King sizes that have wooden support beams and wooden support legs and a white federal law label with "Made For: CVB INC, 1525 W 2960 S, LOGAN, UT 84321" printed on it ("**Noticed Product**"[1]) for personal or household use and not for resale ("**Class**"[2] or "**Class Members**").

2.     Defendant designs, manufactures, markets, distributes, and sells mattresses and other bedroom furniture, including platform beds and the Noticed Products.

---

[1] Plaintiff reserves the right to amend or modify the definition of the Noticed Product based on information learned in discovery and further investigation.
[2] The precise definition of the Class is found below. Plaintiff reserves the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.

3.      Defendant sold the Noticed Product online at Amazon.com, Bed Bath & Beyond, Belk.com, Brookside, eBay, Home Depot, JC Penney, Lowes.com, Lucid, Macy's, Menards, Overstock, QVC, Sears.com, Target.com, Malouf VIP, Wayfair, and at Walmart and in stores nationwide from September 2019 through April 2024 for between $150 and $250.[3]

4.      On September 19, 2024, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 137,000 units of the Noticed Products because the beds can sag, break, or collapse during use, posing fall and injury hazards to consumers.[4]

5.      By the time the recall was issued, Defendant had received *245* reports of the beds breaking, sagging, or collapsing during use, causing *18 injuries*, including contusions and bruises.[5]

6.      In its Recall Notice, Defendant acknowledges the Noticed Product's safety defect and advises that consumers should immediately stop using the beds and contact Lucid to receive a free replacement bed frame. In order to receive this replacement bed frame, Plaintiff and Class Members must disassemble their own beds and write "recalled" on the support rails of the bed with a permanent market and also send a photograph of the bed, as well as a photograph of the support rails on the underside of the bed or a photo of the law label, to Lucid's email address. Then, they wait for Lucid to approve the recall request and send out the replacement parts. Until the replacement parts arrive and are reassembled by the consumer, they cannot use the bed.

7.      Moreover, nowhere in the Recall Notice does Defendant advise that the

---

[3] *See* https://lucidmattress.com/recall/upholsteredplatformbed/?srsltid=AfmBOopmX-HcLsDJPJcofcLQD45NB3glUmFA2TWpCflV4gou5TtoqLuJ (Last accessed February 26, 2025)
[4] *See* https://www.cpsc.gov/Recalls/2024/CVB-Recalls-LUCID-Platform-Beds-with-Upholstered-Square-Tufted-Headboards-Due-to-Fall-and-Injury-Hazards (Last accessed February 26, 2025).
[5] *Id.*

replacement bed frame will be safer than the replacement bed frame Plaintiff and Class Members purchased.

8.      The hazardous nature of the Noticed Product and propensity for injury from the Noticed Product makes a full refund the proper method of recall.

9.      Consumers like Plaintiff trust manufacturers such as Defendant to sell Noticed Products that are safe and free from known safety defects.

10.     Plaintiff and all reasonable consumers are injured at the point of purchase because they had no way of knowing of the Noticed Product's safety defect.

11.     As a result of Defendant's misconduct, misrepresentations, and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

12.     Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantities of the Noticed Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

## PARTIES

11.     Plaintiff Debbie O'Shea is and was at all times relevant to this matter, a State of New York resident residing in Staten Island. Plaintiff is a citizen of New York.

12.     Defendant CVB, Inc. is a Utah benefit corporation, with a principal place of business at 1525 W 2960 S, Logan, Utah, and doing business under the name Lucid. At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, and/or marketed and sold the Noticed Product nationwide, including in New York.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.    This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) & (d) because Defendant maintains minimum contacts with the United States and this State and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in New York. On information and belief, Defendant manufactures, distributes, and markets the Noticed Product in New York. At least in part because of Defendant's misconduct as alleged in this lawsuit, the Noticed Product was sold to and purchased by consumers in this State, including Plaintiff. For these same reasons, venue properly lies in this District and vicinage pursuant to 28 U.S.C. §§ 1391(a), (b), and (c).

15.    Venue is also proper because Plaintiff resides in this District Court.

## COMMON FACTUAL ALLEGATIONS

16.    Defendant claims its "goal is to make great sleep simple, accessible, and affordable for every stage of life. Because when sleep comes easy, so do your dreams."[6]

17.    Specifically, Defendant marketed and sold a variety of beds, including the Lucid Platform Bed with Upholstered Square Tufted Headboard in Twin, Full, Queen, King, and Cal-King sizes. It has wooden support beams and wooden support legs and a white federal law label with "Made For: CVB INC, 1525 W 2960 S, LOGAN, UT 84321" printed on it. It's referred to herein as the "Noticed Product."

---

[6] *See* https://lucidmattress.com/about (last accessed February 26, 2025).

**A.     The Noticed Product Is Dangerous and Unsafe to Sleep On**

18.     The Noticed Product is sold with a frame that can sag, break, or collapse, posing serious safety risks. This defect poses a fall and injury hazard to consumers and, indeed, at the time Defendant issued its Safety Recall, it was already aware of 245 reports from consumers of the bed breaking, sagging, or collapsing during use, causing at least 18 known injuries. On or about September 19, 2024, the U.S. Consumer Product Safety Commission announced a Safety Recall for Defendant's beds due to the hazards that they pose to consumers.

19.     The Consumer Product Safety Commission notes the following:

> This recall involves Lucid Platform Beds with an upholstered square tufted headboard in Twin, Full, Queen, King and Cal-King sizes. They were sold in beige, black, charcoal, cobalt, pearl, and stone colors. The recalled beds have wooden support beams and wooden support legs and a white federal law label with "Made For: CVB INC, 1525 W 2960 S, LOGAN, UT 84321" printed on it. The federal law label is located on the backside of the headboard.[7]

**B.     The Injury Risks to Plaintiff and Class Members Renders The Notice Product Unusable and Worthless**

20.     As a result of the injury risks to users associated with the use of the Noticed Product, by Defendant's own admission in its Recall Notice, the Noticed Product has been rendered entirely worthless.

21.     Specifically, Defendant's recall notice states that "[c]onsumers should immediately stop using the recalled beds and contact Lucid for a free replacement bed frame. Consumers must write "recalled" on the support rails of the bed with a permanent marker and send a photo of the bed, as well as a photo of the support rails on the underside of the bed or a photo of the law label,

---

[7] *See* https://www.cpsc.gov/Recalls/2024/CVB-Recalls-LUCID-Platform-Beds-with-Upholstered-Square-Tufted-Headboards-Due-to-Fall-and-Injury-Hazards (last accessed February 26, 2025).

to recall@lucidmattress.com to receive the free replacement product."[8]

22.     Defendant's recall notice does not explain how the new frame mitigates the problem.

23.     Consumers understandably seek safe products when it comes to large items like furniture, especially products in which consumers plan to sleep; the inherent risk of danger associated with this product and the supposed "remedy" of disassembling the bed and reassembling the bed with another frame, does not make aggrieved or damaged consumer whole.

24.     Plaintiff, like all reasonable consumers, would not have purchased the product had she known of its dangerous propensities. Moreover, the insufficient recall put forward by Defendant does not make Plaintiff or other consumers whole, as a proper recall would include a refund for the item purchased. Yet, the recall provides no monetary relief at all to consumers.

25.     Therefore, the Noticed Product is worthless because it cannot be used without risk of serious injury.

**C.     Plaintiff Debbie O'Shea**

26.     Plaintiff Debbie O'Shea is an adult at least 18 years of age and a citizen of New York, residing in Staten Island, New York.

27.     Plaintiff purchased for her own use a Cara Upholstered Stone Queen Platform Bed Frame with Square Tufted Headboard, part of the class of Noticed Product, in or around February 2020 online from Home Depot for $149. Plaintiff's product is a Noticed Product subject to this Complaint.

28.     Plaintiff read information represented by Defendant on its website, on its authorized product pages on online retailers, on front-label packaging, and on advertisements and

---

[8] *Id.*

understood the Noticed Product to be safe and free from hazardous injuries.

29.     Plaintiff was unaware of the dangerous propensity for injury by the Noticed Product at the point of purchase. She did not find out about the defect until the recall was announced.

30.     Plaintiff is worried about using the bed, as the likelihood of dangerous injury is still very high. Plaintiff no longer uses the bed.

31.     Plaintiff is also unable to avail herself of the recall because she cannot disassemble and reassemble furniture, especially large furniture like beds.

32.     Plaintiff would not have purchased the Noticed Product or would have purchased it for much less had she known of its dangerous propensity for injury. As such, Plaintiff was injured at the point of sale.

33.     Plaintiff is not made whole by Defendant's inadequate recall and has lost the benefit of the bargain by Defendant's omissions and failure to fully refund and recall the Noticed Product.

## ESTOPPEL FROM PLEADING AND
## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

34.     Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Noticed Product, nor did they have any way of knowing about Defendant's conduct concerning the issuance of a replacement completing the recall process.

35.     Neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these

reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

36.     Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Noticed Product, Defendant concealed its conduct, and the existence of the claims asserted herein from Plaintiff and the Class members.

37.     Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on behalf of herself and the following Class pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Class is defined as:

> **Nationwide Class:** All persons in the United States who purchased the Noticed Product for personal use and not for resale during the Class Period.

> Alternatively, Plaintiff seeks to represent a Subclass of New York purchasers (**New York Subclass):** All persons in New York who purchased the Noticed Product for personal use and not for resale during the Class Period.

39.     Excluded from the Class are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendant or any entity in which the Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members. The "Class Period" begins on the date established by the Court's

determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

40.      Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

41.      **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members, as the recall covers more than 130,000 units of the Noticed Product. Moreover, the number of members of the Class may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

42.      **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether the Noticed Product contains the defect alleged herein;

    b.   Whether Defendant failed to appropriately warn Plaintiff and the Class of the damage or injury that could result from the use of the Noticed Product;

    c.   Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Class.

    d.   Whether Defendant promoted the Noticed Product with false or misleading statements of fact and material omissions;

    e.   Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Noticed Product is deceptive, unfair, or misleading;

f.  Whether Defendant's conduct violates public policy;

g.  Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

h.  Whether Defendant violated the NY GBL;

i.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Noticed Product;

j.  Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief; and

k.  Whether Plaintiff and members of the putative Class are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

43.  **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members each purchased and used the Noticed Product, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative Class members. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the Noticed Product's safety and insufficient remedy and recall resulting therefrom.

44.  **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

45.     **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and Class members will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

46.     **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Class members, thereby making appropriate final injunctive relief, as described below, concerning the Class members as a whole.

47.     **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.   The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b.   Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

    d.   Individual joinder of all members of the Class is impracticable;

    e.   Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

    f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class can seek redress for the harm caused by Defendant.

48.     In the alternative, the Class may be certified for the following reasons:

    a.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant;

    b.  Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their interests; and

    c.  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief concerning the putative Class as a whole.

49.    In the alternative to those claims seeking remedies at law, Plaintiff and Class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *See American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
#### **(On Behalf of Plaintiff and the Nationwide Class)**

50.    Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

51.    Plaintiff's individual claims are brought under the laws of the State in which she purchased her respective Noticed Product (New York). The claims of absent members of Class are brought under the state's laws in which they purchased their Noticed Product and identified below.

    d.  Alaska Stat. §§ 45.02.314, *et seq.*;

    e.  Ark. Code Ann. §§ 4-2-314, *et seq.*;

    f.  Cal. Civ. Code §§ 1792, 1791.1, *et seq.* (the "Song-Bervely Act");

g.  Colo. Rev. Stat. Ann. §§ 4-2-314, *et seq.*;

h.  Conn. Gen. Stat. §§ 42a-2-314, *et seq.*;

i.  Del. Code Ann. Tit. 6, §§ 2-314, *et seq.*;

j.  D.C. Code §§ 28:2-314, *et seq.*;

k.  Fla. Stat. §§ 672.314, *et seq.*;

l.  Haw. Rev. Stat. §§ 490:2-314, *et seq.*;

m.  Ind. Code §§ 26-1-2-314, *et seq.*;

n.  Kan. Stat. Ann. §§ 84-2-314, *et seq.*;

o.  La. Civ. Code Ann. Art. 2520, *et seq.*;

p.  Md. Code Ann., Com. Law §§ 2-314, *et seq.*;

q.  Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, *et seq.*;

r.  Mass. Gen. Laws ch. 106, §§ 2-314, *et seq.*;

s.  Mich. Comp. Laws Ann. §§ 440.2314, *et seq.*;

t.  Minn. Stat. §§ 336.2-314, *et seq.*;

u.  Miss. Code Ann. §§ 75-2-314, *et seq.*;

v.  Mo. Rev. Stat. §§ 400.2-314, *et seq.*;

w.  Mont. Code Ann. §§ 30-2-314, *et seq.*;

x.  Neb. Rev. Stat. Ann. §§ 2-314, *et seq.*;

y.  Nev. Rev. Stat. §§ 104.2314, *et seq.*;

z.  N.H. Rev. Stat. Ann. §§ 382-A:2-314, *et seq.*;

aa. N.J. Stat. Ann. §§ 12A:2-314, *et seq.*;

bb. N.M. Stat. Ann. §§ 55-2-314, *et seq.*;

cc. N.D. Cent. Code §§ 41-02-31, *et seq.*;

dd. Ohio Rev. Code Ann. §§ 1302.27, *et seq.*;

ee. Okla. Stat. Tit. 12A, §§ 2-314, *et seq.*;

ff. 13 Pa. Stat. Ann. §§ 2314, *et seq.*;

gg. R.I. Gen. Laws §§ 6A-2-314, *et seq.*;

hh. S.C. Code Ann. §§ 36-2-314, *et seq.*;

ii. S.D. Codified Laws §§ 57A-2-314, *et seq.*;

jj. Tex. Bus. & Com. Code Ann. §§ 2.314, *et seq.*;

kk. Utah Code Ann. §§ 70A-2-314, *et seq.*;

ll. Va. Code Ann. §§ 8.2-314, *et seq.*;

mm. Vt. Stat. Ann. Tit. 9A, §§ 2-314, *et seq.*;

nn. W. Va. Code §§ 46-2-314, *et seq.*; and

oo. Wyo. Stat. Ann. §§ 34.1-2-314, *et seq.*

52.    Defendant manufactured and distributed the Noticed Product for sale to Plaintiff and the Class members.

53.    Defendant impliedly warranted to Plaintiff and Class members that their Noticed Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

54.    As alleged herein, Defendant breached the implied warranty of merchantability because the Noticed Product suffers from a safety defect described above. The Noticed Product is, therefore, defective, unmerchantable, and unfit for its ordinary, intended purpose.

55.    Due to the safety defect, Plaintiff and the members of the Class cannot use their Noticed Products as intended, substantially free from defects. The Noticed Product does not provide a safe and reliable function as intended, represented, or described and poses a serious risk

of injury. As a result, Plaintiff and the members of the Class cannot use their Noticed Products for the purpose for which they were bought; namely, as to safely sleep on.

56.     Furthermore, due to the safety defect, Plaintiff and the Class members cannot hope to operate their Noticed Products as intended unless they dissemble their bed, compile with Defendant's burdensome recall process, wait for a replacement part, re-assemble and hope it works. This does not guarantee that the alleged defect will be resolved, and provides no guarantee that Plaintiff and the Class members will be able to use the Noticed Product in a way that remains free from defect. As a result, Plaintiff and members of the Class cannot use their Noticed Products for the purposes for which they purchased them and for which Defendant represented – safe sleep.

57.     Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies.  Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable.

58.     On January 13, 2025, Defendant received notice by U.S.P.S. Certified Mail from Plaintiff's counsel related to the claims in this Complaint on behalf of Plaintiff and a Class of purchasers of the Noticed Products, specifically Defendant's breaches of its warranties, as described herein. Defendant failed to adequately address the concerns of Plaintiff and the Class Members she seeks to represent.

59.     As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class members have been injured in an amount to be proven at trial.

**<u>COUNT II</u>**
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

60.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

61.    Plaintiff's individual claims are brought under the laws of the State in which she purchased her Noticed Product (New York).

62.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Noticed Products, which Defendant knew and realized.

63.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Classes and Sub-classes were given with the expectation that the Noticed Product would have the qualities, characteristics, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

64.    By its wrongful acts and omissions described herein, including selling the Noticed Product, which contain both a safety defect described in detail above and which are insufficiently recalled, did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

65.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

66.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Noticed Product.

67.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Noticed Product, which retention of such revenues under these

circumstances is unjust and inequitable because Defendant manufactured the defective Noticed Product, and Defendant misrepresented by omission the nature of the Noticed Product and knowingly marketed and promoted dangerous and defective Noticed Product, which caused injuries to Plaintiff and the members of the Classes and Sub-classes because they would not have purchased the Noticed Product based on the exact representations if the true facts concerning the Noticed Product had been known.

68.     Defendant was also unjustly enriched in retaining the revenues derived from Class and Sub-class members' purchases of the Noticed Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant misrepresented by omission the propensity for dangerous injury of the Noticed Product, which caused economic injuries to Plaintiff and the members of the Classes and Sub-classes because they would not have purchased the Noticed Product based on the exact representations if the true facts concerning both the safety and the nature of the inadequate recall had been known.

69.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Noticed Products on the same terms or for the same price had they known the true nature of the Noticed Product and the misstatements regarding what the Noticed Product was and its characteristics.

70.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Noticed Product would work as represented by Defendant in advertising, on Defendant's websites, and the Noticed Product's labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

71.     Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

72.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

<u>COUNT III</u>
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

73.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

74.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

75.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts, and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

76.     Defendant misleadingly and deceptively represents the Noticed Product to consumers, including Plaintiff and New York Subclass members.

77.     Defendant further omitted material facts, including the Noticed Product's dangerous propensity for injury, or that the recall does not adequately make consumers like Plaintiff whole.

78.     Defendant's unlawful consumer-oriented conduct is misleading in a material way because Plaintiff and the other class members believed that the Noticed Product was a safe bed to sleep in.

79.     Plaintiff and other Class Members paid extra money for safe beds. Had Plaintiff and reasonable consumers known that the Noticed Product had a dangerous propensity for injuries, they would not have purchased the Noticed Product at all or at least would not have paid as much for the Noticed Product.

80.     This also makes the fact that the recall is insufficient significant; Plaintiff and reasonable consumers seek the benefit of their bargain returned as there is no benefit from purchasing a dangerous bed; instead, Defendant has offered Plaintiff and reasonable consumers a haphazard "fix" without providing any money back.

81.     Defendant engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

82.     Plaintiff and other Class Members have been injured in as much as they, having viewed the Noticed Product's label, paid a premium for the Noticed Product. Accordingly, Plaintiff and other Class Members paid more than what the Noticed Product they bargained for and received was worth.

83.     Defendant's conduct as alleged herein constitutes a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a), and Plaintiff and other members of the Class have been damaged thereby.

84.     As a result of Defendant's deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, restitution, and disgorgement of all money obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

<u>**COUNT IV**</u>
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

85.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

86.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

87.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

88.    Defendant's labeling contains a deceptive and materially misleading statement concerning its Noticed Product in as much as they misrepresented the Noticed Product was safe to use and free from a dangerous propensity for injury.

89.    Defendant's labeling contains deceptive and materially misleading omissions concerning the existence of a dangerous propensity for injury.

90.    Plaintiff and other Class Members have been injured inasmuch as they, having viewed Defendants' label, paid a premium for the Noticed Product. Plaintiff and other Class Members paid more than what the Noticed Product they bargained for and received was worth.

91.    Defendant engaged in unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

92.    Defendant's material misrepresentations and omissions were substantially uniform

in content, presentation, and impact upon consumers at large.

93.    As a result of Defendant's acts and practices in violation of GBL § 350, Plaintiff and class members are entitled to monetary and compensatory damages, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Products purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Class, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class;

C. Declaring that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendant to make full restitution to Plaintiff and the members of the Class;

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

G. Granting an Order requiring Defendant to fully and adequately disclose the continued risk if replacing the bed frame is the only recourse as part of the recall;

H. Ordering a jury trial and damages according to proof;

I. Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

K. Awarding prejudgment interest, and punitive damages as permitted by law; and

21

L.  Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:   February 26, 2025                    Respectfully submitted,

*/s/ Lisa R. Considine*
Lisa R. Considine
Mason A. Barney
Leslie L. Pescia*
SIRI | GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lconsidine@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis*
Daniel Tomascik*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com
         dtomascik@laukaitislaw.com

*\*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Putative Class Members*